And we'll move on to the third argument for today, Griffin v. Asla, and that's case number 22-35816. And we'll move on to the third argument for today, Griffin v. Asla, and that's case number 22-35816. Good morning, Your Honors, and may it please the Court, Thula Charia for the Plaintiff-Appellant Kristofer Griffin, I'd like to reserve three minutes for rebuttal. My client was arrested, charged with repeatedly raping a small child, held in jail for nine months, tried, and then acquitted. The case against him was shaky from the start, and by the time trial came around, it was nonexistent. But defendants were so sure they had their man that they ignored the growing mountain of evidence to the contrary, and in the process, they ruined an innocent man's life. The question in this appeal is whether anyone is liable for that. The District Court held with significant regret, if you look at the first couple of paragraphs, that the answer was no, but that's not right. I'd like to focus here on one claim in particular, the malicious prosecution claim against Detective Asla for continuing the prosecution of my client after a probable cause had dissipated. Detective Asla held the keys to my client's jail cell. He was the only one who knew how shoddy the whole case against my client was, and he kept key bits of that information from the DA, so he's liable for malicious prosecution under the Fourth Amendment. What this Court has said about dissipation is that probable cause can dissipate if an officer later learns additional information that decreases the likelihood that the accused committed the crime he's accused of. That's in Ortiz-Hernandez. In Nicholson, a more recent case, the Court explained that police may not disregard facts tending to dissipate probable cause, and if probable cause dissipates, a suspect must be released from arrest. What information did Detective Asla keep from Brown, or I'll say more broadly, the prosecution? The information that he kept from the prosecution is the shakiness of the evidence at the beginning. In his deposition, he explained that the single piece of objective evidence supporting probable cause at the outset was the CARES report. CARES is an organization that conducts forensic interviews of very young victims of sexual abuse. CARES did that to the victim. He did with the victim here. They conducted a forensic interview. They wrote a report. But before they did that, they had a conversation with Detective Asla, and in that conversation, he summarized the case so far. That's where the errors begin because he summarized the initial accusation came from the victim gave the initial accusation to her grandmother, but the grandmother elicited those accusations through a series of leading questions. Did he take out his penis? Did he touch your privates? Yes or no type questions. I think she introduced the words. She definitely introduced the words penis and privates to the conversation. I think she introduced them to the child's vocabulary. But in his summary to CARES, and he confirms this at page 163 of the further records of record, in summary to CARES, he didn't say it came out through leading questions. He didn't say that the grandmother changed her account of her interrogation of the child several times. He just said A.S. said he pulled out his penis. A.S. said he touched her privates. And he acknowledged in his deposition at page 158 of the further excerpts that that kind of leading question could affect the child's memories. But that's not what he put in the CARES report. That's not what he put in his own report of the conversation with the grandmother and the mother. It's not what he put in the search warrant affidavit. He summarized, and he thought that was an accurate representation. He left out the fact that these leading questions were used. Then the first instance that you might expect to see some kind of corroboration of the victim's accusations was during execution of the search warrant. The victim said that my client used a bottle of lotion in a black container that was hidden in a desk in the lesson room. There was no desk in the lesson room. There was no bottle of lotion or lubricant or anything else found in the lesson room. But in my client's residence a mile away in his wife's nightstand where such things are commonly kept, yeah, there was a bottle of lubricant. In his report of that search, he said, I searched these two places. He goes into a long recitation of what happened at the school. And then he says a bottle, a black container of lubricant was found during the execution of the search warrant. In context, and this is on page 41 of the further excerpts of record. In context, this is a false insinuation that the bottle was found just as the victim said it would be. That is not what happened. It was found a mile away in his house where the victim had never been in a nightstand, not in a desk in the lesson room. There was no desk in the lesson room. Those are the bits of evidence at the beginning that the prosecutor didn't know that only Detective Aisla knew. Then after that, every further investigation is a strikeout. In his affidavit, search warrant affidavit, Detective Aisla explains logically enough, I expect based on the case so far that I expect I'll find DNA on the victim's clothing. So he obtains five recent pairs of underwear from the victim's laundry. He also swabs my client for DNA. He swabs the piano bench where the actor alleged to have taken place. He also seizes a number of devices, and that will become important. A second number of iPads from the lesson room, and he has this all sent off for analysis. He also sends off the lubricant found in my client's nightstand for analysis. So this is all March 2019. May 8th, the first report comes back. No semen detected on any of the underwear, and that report goes straight to Chris Aisla. This is on page 98 of the further excerpts. June 28th, no traces of lubricant on any of the underwear. Again, sent straight to... I don't want to deter you from continuing with this, but I want to ask a question related to it. At what point is this information transmitted to the prosecutor, if ever? These reports do go to the prosecutor, Your Honor. He sits on them for two or three months. The first report comes in May 8th. The rest of them he has by the end of June. He sits on them until August 6th or sometime after August 6th. On August 6th, my client's lawyer in the criminal case asks for discovery, and Brown says we haven't gotten the reports yet. It's not true. Detective Aisla has them. He just hasn't given them to the prosecutor. Brown is telling the truth, but only because Aisla hasn't given them to Brown. As far as I know, Your Honor, and as far as the record shows. So no semen on any of the underwear, no lubricant, nothing on the devices, no semen on the piano bench, and the devices are really important because these are iPads on which the students did the second part of their piano lessons. They did some kind of piano-type game on the iPad, and the app that they used would take selfies of them as they were doing these lessons. And what the victim said, and she was consistent about this, was that these acts happened while I was doing iPad time. So you would expect to find some kind of evidence, a selfie or something, that would show something was happening on these iPads. Nothing but kiss. So by the end, every single investigatory lead from the victim's accusations struck out. The initial accusation itself was infected, tainted by these leading questions. And Chris Aisla is the only one who knows the whole story. What, in your view, is the legal standard that you have to meet in order to be able to create a triable issue as to Detective Aisla and how you meet it? But how do you define that ultimate standard? Well, I think I guess the ultimate standard, Your Honor, is probable cause, the same as it is at the outset. And the question is, you know, by July 2019, that's the time that we say probable cause has dissipated, by then has the fact that everything in the investigation struck out, the fact that the initial investigation was so shaky, does that mean that there is no longer probable cause? Do you have to make a showing of bad faith on the part of the officer? No, Your Honor. I think that is an element in a separate claim that is in the briefs, in the Fifth Amendment-type claim. And I'm happy to talk about that, but that's sort of the judicial deception type of claim from Butler. That's a separate claim. The Fourth Amendment claim, it's objective. It doesn't require a showing of bad faith. All it requires is a showing that probable cause has dissipated at some point during the investigation. That's from a case, Nicholson, from 2019, and also from Ortiz-Hernandez. In a more recent case from 2022 called Hayworth, this court explained that probable cause must exist at the initiation of and throughout the prosecution. And, in fact, it reversed the district court's dismissal of a malicious prosecution claim for relying only on evidence that existed at the initiation. And I want to make sure I understand the structure of your argument. Are you saying that there was probable cause at the time of the initial arrest and charging, but it dissipates later, so the violation to the extent it exists arises later? Is that what you're saying? That's right, Your Honor. And that's because my client conceded in the complaint that there likely was probable cause at the outset. It was shaky because of all the infirmities I talked about, but that's the concession that was made in the complaint. So you conceded probable cause at the time the complaint was filed. I thought our case law said that once the complaint is filed, the investigatory officers are off the hook. Now you're saying that ASLA withheld information or omitted information after the complaint was filed? He omitted information. I don't know exactly what was in the content of the complaint, but he never told the prosecutor at any time that the grandmother used leading questions to get the accusation of the child. He never told the prosecutor. But that would have presumably been information that he knew before the complaint was filed and withheld. That's right, Your Honor. But then you're acknowledging there's probable cause even without that information. So I don't understand how we can consider that information as being a malicious prosecution claim when you're acknowledging there was independent probable cause. Here's how, Your Honor. At the outset, suppose he had told the prosecutor the grandmother used leading questions but the victim said this and then we looked for lubricant. We didn't find it where the victim said it would be, but we did find something a mile away, who knows, and the prosecutor said, let's go ahead. Maybe there's probable cause there. But the prosecutor didn't know that, and then nothing panned out. So even if the prosecutor had known that and there had been probable cause at the outset, that might be one thing. But if the prosecutor didn't know that at the outset, never knew that, and then by the time none of the investigative leads panned out, if the prosecutor had known, there's no probable cause. Because the prosecutor didn't know the whole picture of how shaky the evidence was, the prosecutor only knew that none of the investigatory leads panned out. I understand, but the information that's omitted, it seems to me, would have to completely negate probable cause, and you don't seem to be making that argument. You're just saying there was additional information here that should have been considered that the prosecutor did. So the prosecutor might have made a different decision using his prosecutorial discretion, but you're not arguing that it negated probable cause. I am arguing that the additional information negated probable cause by the time none of the investigatory leads panned out. I think I understand the argument as follows, that the information that was omitted at the outset, that was not... You had probable cause despite the omission of that information. But as we go forward, and as the case looks thinner and thinner and thinner, we do get to consider the information that was omitted as we try to decide whether probable cause has so dissipated that the prosecution now has to be dismissed, and you're saying that we look at all of that evidence as we're looking at the duty of Aslan to correct the record so the prosecutor dismisses. That's the argument? Exactly, Your Honor. And he never, and Aslan never, not even after the complaint was filed, told the prosecutor that there were leading questions that were used. There is nothing in the record to that effect, Your Honor. The only thing in the record is the care summary, his admission that he gave CARES, the summary, his reports, and his affidavit. All of them have the same basic structure where the victim said this, the victim said that. I do see that I'm running into my rebuttal time, so I will reserve the rest of rebuttal. Thank you. Thank you. Good morning, Your Honor. May it please the Court, my name is Kenny Montoya and I represent the city defendants in this matter. I'm going to reserve two minutes for rebuttal time. Well, you're the appellee, so you don't... Don't get to? You don't get rebuttal, so you better just use your time. I took a shot. First time, Judge, pardon me. Let's see. The key evidence... Let me understand here. My sheet says we've got somebody later who's arguing to defend Brown. Is that right? Yes, Your Honor. So when you say city defendants, you don't include Brown? I do not. So you include Asla and Kydel? Asla, Kydel, and the city. Okay. Yes. I'm going to go bounce around here a bit just to address some of the things that were raised by the appellant. The key issues of evidence that was submitted... First, with the legal standard, I want to understand what you claim is the legal standard. For a case where the plaintiff claims, concedes probable cause existed, claims that it dissipated, what's the standard for evaluating that claim in your view? Well, I think that... I apologize for skirting your question, Judge, but I think the problem with that is this isn't properly in front of you. This wasn't presented down below to Judge Mossman. This whole thing of dissipating probable cause, there's a single sentence in the response that reads, probable cause can dissipate, and when it does, the continued prosecution and detention is unreasonable by constitutional standards. That's it. You mean when you say the response, that's the response in the district court? I apologize. Indeed, Judge, that was it. That was the only thing presented to Judge Mossman in response to our summary judgment. Is there any ruling from... How did this issue come... So there's no ruling from Judge Mossman on this issue at all? Except to point that there was no evidence. There was nothing submitted that would address it. Plaintiffs submitted or appellants submitted nothing. They didn't make all of these arguments that we're hearing today. They didn't make them in front of Judge Mossman. Suppose we don't agree with your forfeiture argument. Tell me what you think the correct legal standard we should apply is. I hadn't considered it, Your Honor. I apologize. I haven't. I didn't prepare for that. I didn't anticipate it. I apologize. You know, I'm reading Judge Mossman's order. He writes, I'm on page 20 of his order at ER 23, plaintiff asserts that probable cause dissipated at some point before trial and from that point forth his prosecution was malicious. If you continue reading, he'll address the fact there's no evidence that supports it. There is. Yeah, but that suggests that they did raise the argument. He just said that there's no evidence that supports it. I don't understand. The sentence I read you is the only mention of the word dissipate in their submissions. We generally don't nail someone with forfeiture when the district court itself raises the claim and addresses it on the merits. We now have a merits ruling on the claim and kind of forfeiture issues have dropped out. Well, the manner in which he addressed it was to say there is no evidence of it. Okay. But now we've got to decide whether there's evidence, and this goes to Judge Collins' question to you, and I guess you don't have an answer for it, which is how do we look at that evidence? I mean, we know a jury said he's not guilty, and so I guess the question that, I mean, obviously if the jury had come out the other way, this wouldn't be an issue. So the only reason we're here is because the jury said he's not guilty, and so now he's claiming, well, you should have dropped this. You should have known that you didn't have a case because of information that came up in the investigation. Sure. First off, there was no jury. This was a trial to the bench. Thank you. And next, the challenge of Aisla and all of his alleged wrongdoing was a subject of a motion to controvert. During the case, they had a motion to suppress the search warrants, which included an attack on the affidavit, and then they had a motion to controvert later. Both were heard by the state court judge who denied them. So, in essence, going up to Judge Mossman in the federal case, they're attacking something that's already been decided. So this wasn't Aisla where no one ever considered his actions. His actions were considered, and the circuit court, the state court, denied it. So they don't get to keep bringing that up, and they certainly don't get to attack it in federal court in the manner in which they did, which is why Judge Mossman said the state court could properly rule. You can imagine a situation. I mean, our case law seems clear that once a prosecution is initiated that the investigator is off the hook. We've got a different variation of that here where he's arguing that information, I mean, are you saying that that's the end of the inquiry and there's no other information that can come up during the investigation? Is there any point at which the prosecutor should have said, okay, there was probable cause at the time, but now there's not? And is that the standard? Do we have to say that whatever omissions have to ultimately show that there's no probable cause, whether it's either at the time or six months later? Well, for purposes of the dissipation argument, there has to be evidence that would, in essence, destroy probable cause, period. And you don't agree that that's ever happened here? No, not at all. The issues they're talking about. So all this evidence comes up, says none of these theories pan out, and so are you saying that because he was accused, that will stand alone as probable cause no matter what the other evidence shows? There's a long list of reasons that were submitted on the record. They were submitted by the appellant as ER-76. There's a list of things that supported the probable cause finding for Detective Asla at the time. At the time of the complaint? At the time of initiating or as part of the investigation, so prior to the arrest. Right, but that's the question, is what do we do after? So are you saying we have to go to that list? Where did you say that was? ER-76. And so we go to that list and say, do any of these still stand up? Absolutely. And they are a long list that detail what the young lady, the 8-year-old child, said was done to her by the appellant. Well, but that's my question, is, I mean, there is some, whether it's an 8-year-old child or anyone else, at some point it can't just be based, it seems to me, on the statement that's made. If those statements continually show not to have any basis in fact. And they don't. There's been nothing submitted. The materials that are submitted to you talk about billing records, billing records having to show that Detective Asla didn't take a look at, that would have shown that she was playing the game at such and such a time. That's nonsense. The fact that the selfie argument, I thought we had heard the last of that at summary judgment, that somehow. Okay, that didn't strike me as the most compelling either. It's nonsense. Yeah. The idea that he's going to stand behind her and be sexually assault her while she's taking a selfie. Right. But the evidence that has been submitted isn't enough to overcome. Where's this list? I'm at ER-76. Are you just saying it's in? I thought there was like a bullet point list. This is just maybe I'm. I apologize. ER-176. Okay. Can I ask you about the revocation of his bail? Because it appears that his bail was revoked and he was taken back into custody pending trial based on an auto billing email being sent out that was treated as some kind of nefarious contact in violation of a court order. The whole thing seems crazy and yet he sat in prison for months. How does this happen? So it happens because the information, the investigation conducted by Officer Keidel, she had gone to the residence of plaintiffs or the appellant's mother, the business, to investigate. Hey, how was your billing done? Was this in fact an auto billing statement or was it not? Was this intentionally sent by the arrestee minutes or hours after he was released from jail? She was unable to make contact with her. She left two voicemail messages. The mother got them but never returned them because they'd been advised not to talk to the police. So then she contacted the jail and found out the timeline and said, yeah, and that the release agreement specified that he wasn't to have contact with the victim's mother and arrested him based on that. The idea that she received the evidence, there's nothing in the record shows she ever saw it, this email that purports to describe how it couldn't have been an intentional but rather an auto-generated email. There's nothing in the record that Keidel had any involvement beyond processing him, speaking with AISLA after the fact, when she took him to the police station for processing. That's the last she had anything to do with it. So the idea that somehow or another she knew that he should be released because it was an auto-generated, that never came to her attention at all. Were there any motions after he was re-arrested, re-incarcerated because of the billing? I mean, he sits there for nine months before billing. Were there efforts on behalf of his team to get out of jail to say, well, wait a minute, this was automatic billing? No, it never saw the light of day in the courtroom. He just sat there. He just sat there. And his team made no motion to say, hey, wait a minute, that was inadvertent, that was automatic. They filed three motions, two motions to compel evidence and a motion to controvert, and those were the only ones filed. That's state law practice. What's a motion to controvert and what was in the motion? It is, in essence, a determination by the state court whether or not there's probable cause or that the case should be dismissed because of the fact that the state hasn't met its burden. And so the state, in this case, was able to demonstrate. Oh, I'm way over. I apologize. That's okay. The state was able to demonstrate, and the judge ruled from the bench that there was enough probable cause. So the judge made the determination there was probable cause. So he heard all of this alleged wrongdoing that was in the affidavit and decided there wasn't enough. So that is – and here's the thing, Judge, even if you were to say, well, you know, maybe it's not enough, he's still entitled to qualified immunity because there hasn't been any case that has shown that him relying on all that went through the district attorney going to file charges, the motions to suppress, and the then motion to controvert, all make very clear that he had probable cause, which the court said in an earlier case, it's a very low bar. And the statements in ER 176, there's nothing that was received afterwards that's going to flip that. The idea that DNA wasn't present, okay. DNA is wonderful. It's nice if we got it, but that's not always the case. And phone records, the records on the billing, that's just nonsense. That doesn't have anything to do with whether or not the child was sexually assaulted. Okay. We've got some time, so we'll give time to another counsel here, Mr. Jones. Thank you, Judge. Thank you. Good morning. May it please the Court, Alex Jones for Defendant Allison Brown, who was the prosecutor in this case. Plaintiff sued Ms. Brown for malicious prosecution and due process violations, but all of the alleged misconduct, all the categories of alleged misconduct that plaintiff has specified would fall under absolute prosecutorial immunity. Is there any case? Yeah, it's absolute immunity. I guess the only way to get around that would be to show that the prosecutor, I don't know, took some action outside of official duties, which I'm not sure how that would ever happen when you're talking about it. I mean, any prosecution would be within the official duties. That's correct. Any action that's taken within that prosecutorial role would be within the prosecutor's role as an advocate for the state and an officer for the court. Prosecutor's role for which there is absolute immunity does not encompass the entire range of behavior by prosecutors. So prosecutors get absolute immunity for some things but qualified immunity for others. Why is everything that was done here with which Brown was charged comes within the absolute immunity category? Because the categories of alleged misconduct that plaintiff has specified as being supposedly not subject to prosecutorial immunity, they all fall within the categories and types of conduct that Supreme Court and Ninth Circuit case law has made clear. Why is that? Is that because they all relate to decisions on whether to continue the case? Well, they relate to decisions not just about whether to continue the case, but also whether to present certain information or evidence to the court, which falls within the prosecutor's role as an advocate. For example, the four categories of misconduct that plaintiff has specified are false and misleading statements to the court, false and misleading statements to defense counsel, refusal to provide discovery, and the refusal to correct the record after plaintiff was arrested for a second time for the apparent violation of the release agreement. As for the first two categories, the failure to – the alleged false and misleading statements to the court and to defense counsel, Supreme Court and Ninth Circuit case law has made clear that as long as statements are made within that role as an advocate, there's no exception for false or misleading statements made or even elicited by prosecutors within that judicial process. For example, in Brougham v. Bogan, the Ninth Circuit case, the prosecutor is absolutely immune from liability for the knowing use of false testimony at trial. In Burns v. Reed, Supreme Court case explained that prosecutorial immunity does not have any exception for making false or defamatory statements in judicial proceedings as long as they are related to those proceedings and also for even eliciting false and defamatory testimony from witnesses. So what role, if any, did Prosecutor Brown have with respect to the continuing incarceration after the rearrest? So he's sitting there for nine months in jail waiting for trial. What role, if any, did Brown have in the fact that he stayed in jail for nine months? Well, the prosecutor, Ms. Brown, initially moved for the arrest warrant to rearrest him. And the role when it comes to his staying in jail, as it comes to plaintiff's complaint and allegation, was that information came to Ms. Brown's attention showing that he should not have been arrested and therefore Ms. Brown should have presented that information to the court to correct the record, to show that there was no probable cause or that probable cause had dissipated for that second arrest and that he should have therefore been released. Do you have case law that says that a prosecutor has absolute immunity with respect to arrests as distinct from all sorts of things that go on in the courtroom? Because it seems to me that that may be qualified rather than absolute immunity. Well, it depends what function the prosecutor is playing when it comes to the arrest. I think the most on-point case here would be Galina v. Fletcher, a Supreme Court case that explained that filing a motion for an arrest warrant and soliciting information to present to the court in support of probable cause to arrest, those are both prosecutorial functions because they require the exercise of the judgment of the advocate. But on the other hand, when the prosecutor personally attests to, certifies under oath as to the truth of the information supporting probable cause to arrest, then that steps outside of the role of the prosecutor because then that's the role of a witness. But we're here not talking about the initial charging and the initial arrest. We're talking about incarceration for failure to abide by conditions of parole. Is that still within absolute immunity and do you have a case that's that precise? I do not have a case to refer to that's that precise. But I think the overall principle still here would apply if not more so because we're not talking about an initial determination of probable cause at the outset. Yeah. I mean, doesn't this all depend upon a determination of probable cause, whether it's at the outset or whether probable cause is dissipated? It seems like this is all a question of is there probable cause and isn't that within absolute immunity? In terms of the prosecutor's role? Is there any time that a determination of probable cause would fall outside of absolute immunity for a prosecutor? I'm probably asking the wrong counsel on this. I don't think so. I think it would have to be something along the lines of the prosecutor herself taking on the role of a witness by personally attesting to the fact. That's the cases that have diminished it. Okay. Well, I've got only one question and I'm nibbling at the edges. We know that a prosecutor, to the extent that the prosecutor is involved in investigations, that that's qualified immunity. I don't think what we're talking about here is an investigation. What we're talking about is, and it's not probable cause to arrest for the crime. What we're talking about here is probable cause to re-arrest for violations of parole. So this is not your other probable cause, which is, I think, absolute prosecutorial immunity. But you're saying there's absolute prosecutorial immunity when the prosecutor says we can re-arrest him for violations of parole? Because that really has nothing to do with the courtroom. That has to do with whether or not he should be released pending trial. Well, I'm not sure what principle would really distinguish that from arresting the criminal defendant in the first place. It's still part of the judicial proceeding about whether or not there's probable cause to arrest him. Well, it's quite different. You arrest the person in the first place because there's probable cause to believe that he's committed a crime. He's then released on bail. And the only reason you can re-arrest him once he's posted bail is that he's violated the conditions of parole. It has nothing to do with his guilt for the crime. It's whether he violated the conditions of parole. So I think they're quite different questions. And it may be that the prosecutor's protected by absolute immunity on both, but they're very different questions. It is a different question, but I think still the question when it comes to the prosecutor's role is whether the prosecutor is acting as an advocate for the state or an officer of the court or, on the other hand, an investigator or a witness. So if the prosecutor had, for example, fabricated evidence in order to generate probable cause to re-arrest the person or had certified or attested to the truth of facts supporting a re-arrest, then the prosecutor would be outside that role. But when it comes to moving to arrest and selecting which information to present or not to present to the court related to the justification for an arrest, I think the overall principle and reasoning that the Supreme Court expressed in Killine v. Fletcher would still apply and would still fall within prosecutorial immunity. Well, it may well be in any event that it doesn't make any difference because I think I'm right that once Mr. Griffin is re-arrested for violation of conditions of parole, Brown had no further involvement in that. As I understand it, there were no motions to release, nothing. I mean, the only thing that happened was he was re-arrested and then he sits there. And if there's probable cause for the re-arrest, even if all Brown has is qualified immunity, he's probably okay anyway. Okay. I would not disagree with that, Your Honor. I bet you wouldn't. Thank you. Thank you. We'll hear a rebuttal now from the appellant. And I think time is up, so let's give two minutes. Thank you, Your Honor. Oh, there was. All right. You were smart enough to reserve it. I did. Well, we'll bump it up to two then. I did. I think my friends on the other side went over, so I'll try my best to stay within time. I'll start with the motion to controvert and the preclusion issue. The district judge didn't cite anything for this preclusion analysis, and there is actually a standard for it. It's called the Heck Bar, Heck against Humphreys. It's a Supreme Court case from the 1970s. And had the district judge cited Heck, the Heck Bar doesn't apply when the plaintiff has been acquitted. The Heck Bar says you can't bring a civil rights case in which a verdict in your favor would call into question a conviction. But there was no conviction. My client was acquitted. And so that's the preclusion analysis. It doesn't apply here. And so the fact that the motion to controvert was decided against him in the state court doesn't make a difference here. It doesn't preclude his claim. We didn't talk about absolute immunity for the prosecutor in your opening. Can you briefly address that? I'd understood, I mean, from your – I just went back to look at your brief. If you said, at least with respect to allegations regarding the prosecutor's failure to authorize plaintiff's release, there was no probable cause, aren't all of your claims that go to claims against the prosecutor, don't they all revolve around a determination of probable cause or not? Yes, Your Honor, although for that claim it's the probable cause to re-arrest. And the prosecution had the information they needed. But still, it depends on whether there was probable cause to re-arrest. That's right, Your Honor. And actually on that, I think Your Honor asked, isn't it true that any time a detective or any determination of probable cause falls into absolute immunity? And that's not quite right. In Lacey, this court explained that deciding whether there's probable cause for an arrest is not a function protected by absolute immunity. Saying that there is before a judge is protected. Deciding whether there is or not for an arrest, not protected. That's Lacey. And I think in Torres, this court went on to say that it's the kind of thing that any police officer might have performed, and any police officer does have to decide whether there's probable cause to arrest someone. That's a situation where qualified rather than absolute immunity applies. Can I ask you just one more question about the standard? Because in your opening brief, when you addressed that issue, you cite the Awabdi case and say that you can rebut the probable cause that existed if officials improperly exerted pressure on the prosecutor, knowingly provided misinformation to them, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was instrumental in causing the initiation of legal proceedings. So you seem to say that the standard was some form of bad faith or intentional misconduct, but that wasn't what I thought you said in your primary, so I'm trying to figure out what you claim the standard is. I didn't get any help from the other side on that issue. Absolutely, Your Honor, and I apologize. I think I misunderstood your question earlier. So there's two separate questions. The first question is did probable cause dissipate? That's an objective standard. There's a second question. Is Detective Asla's malicious prosecution claim against Detective Asla immunized essentially by the fact that the prosecutor was involved? That's where the bad faith question comes in. So you have to show two elements, then, according to your view, that there was objective dissipation and that there was bad faith. I think bad faith is one of the things that can break the chain of cause or rather continue. There might be alternatives at that second prong, but it's two prongs. It's not just dissipation. It's dissipation plus something else, and so it's bad faith and what else in your view? Yes, so what this court explained in Awabdi and in Nicholson is that the prosecutor's intervening independent determination doesn't break the chain of causation if it's foreseeably influenced by the officer. That's from Nicholson. In Awabdi, the court said if the prosecutor's decision is tainted by the officer's conduct. That kind of taint can come from a few things. It can come from concealing exculpatory evidence, which is certainly bad faith. It can come from recklessness, recklessly false misstatements, and it can come from knowingly providing misinformation. This is all in Awabdi. And here, Aisla did all of those things. He testified in his deposition, yeah, I knew that these leading questions could affect A.S.'s memories. He knew that, and then when he asked if he was concerned about that possibility, he said he wasn't. When asked whether he was concerned if it had happened, he said he wasn't. This is all on pages 157 to 159 of the Federal Records of Records. In the report of the search where he says, and I urge the court to go look at this on page 41 of the Federal Records, he has a long recitation of what happened during execution of the search at the music school, and then he says, oh, yeah, and we found a black container of lubricant during the execution of the search warrant. It sure sounds like he's saying we found it in the desk in the lesson room just as the victim said it would be found, and it's just not true. Can I, I know you're over, but the excerpts with record 176, there is that long laundry list. This is very detailed testimony that was given. At what point can that detailed testimony not be enough? You've pointed to kind of holes that start to pop up in it, but at what point, because even under your theory, we have to find the probable cause dissipate. There was no probable cause. So don't you have to go through and show that each of those statements was wrong, and how do you do that when there's a statement that describes in detail what's alleged multiple times? How do you, when does probable cause dissipate such that you say there's no way we can believe this individual anymore? So two answers to that, Your Honor. First, if you look at that bullet point list, it's interesting. It says she drew a picture of the room where she said the abuse occurred. She drew a picture of a plaintiff standing near his desk, and that he had a bottle of cream at his desk in one hand and the other hand on his penis. There is no desk in the lesson room. You can look at page 8. But that's just his arguments to jury. There's always these questions about whether all the recollections of a victim would be accurate or not. But it can't be the case that just because the victim gives ten statements and descriptions and one or two or three or four of those ten turn out not to be true that we say, okay, there's no more probable cause. Well, so what this court said in a case called Stute is that a young child's statement can't support probable cause on its own if it's not trustworthy and reliable. And here, everything was infected from the start by the grandmother's leading question. So I just want to sort of paint the picture of what the prosecutor thought by July 2019. The prosecutor thought, okay, none of the forensic evidence panned out, no DNA, no semen, no lubricant. And this was before the rearrest, you're saying? No, this is after the rearrest. This is two months in when all the forensic reports have come in. The prosecutor is thinking, okay, none of that panned out. But CARES did this forensic interview with the child that confirmed the initial accusation. Oh, and we found the lubricant in the lesson room just like the child said we would. In fact, none of the forensic interview panned out. None of the forensic reports panned out. And also, the interview was infected because the CARES interviewer didn't know about the leading questions. Oh, and we didn't find the lubricant where the victim said it would be. Those are two very different pictures of what's happening here. Well, I don't disagree with that. I mean, and your client was acquitted. But that's a different question from whether a malicious prosecution claim could go forward. I mean, you know, so we'll have to grapple with that. But I think we have your arguments, and we've got the briefs, and we really appreciate counsel's attention in this case and the good arguments that we received. Thank you very much, Ross. The case is now submitted, and the court's going to take a five-minute recess, and then we'll come back for a couple other cases. All rise.
judges: FLETCHER, NELSON, COLLINS